# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,
STATE OF ILLINOIS,
COMMONWEALTH OF PENNSYLVANIA,
and
COMMONWEALTH OF VIRGINIA

        *Plaintiffs*,

  v.

NEXSTAR MEDIA GROUP, INC.,
and TRIBUNE MEDIA COMPANY,

        *Defendants.*

No. 1:19-cv-2295 (DLF)

## HOLD SEPARATE STIPULATION AND ORDER

It is hereby stipulated and agreed by and between the undersigned parties, subject to approval and entry by the Court, that:

### I. DEFINITIONS

As used in this Stipulation and Order:

A.    "Acquirer" means Scripps, TEGNA, Circle City Broadcasting, or any other entity or entities to which Defendants divest any of the Divestiture Assets.

B.    The "Big 4" television networks mean the NBC, CBS, ABC, and FOX networks.

C.    "Circle City Broadcasting" means Circle City Broadcasting I, Inc., a Delaware corporation headquartered in Indianapolis, Indiana, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, members, officers, managers, agents, and employees.

D.  "Divestiture Assets" means the Divestiture Stations and all assets, tangible or intangible, necessary for the operation of the Divestiture Stations as viable, ongoing commercial broadcast television stations, including, but not limited to, all real property (owned or leased), all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property relating to the Divestiture Stations; all licenses, permits, and authorizations issued by, and applications submitted to, the FCC and other government agencies relating to the Divestiture Stations; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases, and commitments and understandings of Defendants relating to the Divestiture Stations; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to the Divestiture Stations; all customer lists, contracts, accounts, and credit records relating to the Divestiture Stations; all logs and other records maintained by Defendants in connection with the Divestiture Stations; and the content and affiliation of each digital subchannel of the Divestiture Stations.

E.  "Defendants" means Nexstar and Tribune.

F.  "Divestiture Stations" means KCWI-TV, KFSM-TV, KSTU, WATN-TV, WCCT-TV, WGNT, WISH-TV, WLMT, WNDY-TV, WNEP-TV, WOI-DT, WPMT, WQAD-TV, WTIC-TV, WTKR, WTVR-TV, WXMI, and WZDX.

G.  "DMA" means Designated Market Area as defined by The Nielsen Company (US), LLC, based upon viewing patterns and used by BIA Advisory Services' *Investing in Television Market Report 2018* (4th edition).

H.  "FCC" means the Federal Communications Commission.

I.  "KCWI-TV" means the CW-affiliated broadcast television station bearing that call sign located in the Des Moines-Ames, Iowa, DMA, owned by Defendant Nexstar.

J.      "KFSM-TV" means the CBS-affiliated broadcast television station bearing that call sign located in the Ft. Smith-Fayetteville-Springdale-Rogers, Arkansas, DMA, owned by Defendant Tribune.

K.      "KSTU" means the FOX-affiliated broadcast television station bearing that call sign located in the Salt Lake City, Utah, DMA, owned by Defendant Tribune.

L.      "MVPD" means multichannel video programming distributor.

M.      "Nexstar" means defendant Nexstar Media Group, Inc., a Delaware corporation headquartered in Irving, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

N.      The "Overlap DMAs" means the following thirteen DMAs: Davenport, Iowa-Rock Island-Moline, Illinois; Des Moines-Ames, Iowa; Ft. Smith-Fayetteville-Springdale-Rogers, Arkansas; Grand Rapids-Kalamazoo-Battle Creek, Michigan; Harrisburg-Lancaster-Lebanon-York, Pennsylvania; Hartford-New Haven, Connecticut; Huntsville-Decatur-Florence, Alabama; Indianapolis, Indiana; Memphis, Tennessee; Norfolk-Portsmouth-Newport News, Virginia; Richmond-Petersburg, Virginia; Salt Lake City, Utah; Wilkes Barre-Scranton, Pennsylvania.

O.      "Scripps" means the E.W. Scripps Company, an Ohio corporation headquartered in Cincinnati, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

P.      "TEGNA" means TEGNA Inc., a Delaware corporation headquartered in McLean, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

Q.      "Tribune" means defendant Tribune Media Company, a Delaware corporation headquartered in Chicago, Illinois, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

R. "WATN-TV" means the ABC-affiliated broadcast television station bearing that call sign located in the Memphis, Tennessee, DMA, owned by Defendant Nexstar.

S. "WCCT-TV" means the CW-affiliated broadcast television station bearing that call sign located in the Hartford-New Haven, Connecticut, DMA, owned by Defendant Tribune.

T. "WGNT" means the CW-affiliated broadcast television station bearing that call sign located in the Norfolk-Portsmouth-Newport News, Virginia, DMA, owned by Dreamcatcher Broadcasting LLC, regarding which Tribune will exercise its option to acquire from Dreamcatcher Broadcasting LLC.

U. "WISH-TV" means the CW-affiliated broadcast television station bearing that call sign located in the Indianapolis, Indiana, DMA, owned by Defendant Nexstar.

V. "WLMT" means the CW-affiliated broadcast television station bearing that call sign located in the Memphis, Tennessee, DMA, owned by Defendant Nexstar.

W. "WNDY-TV" means the MyNetworkTV-affiliated broadcast television station bearing that call sign located in the Indianapolis, Indiana, DMA, owned by Defendant Nexstar.

X. "WNEP-TV" means the ABC-affiliated broadcast television station bearing that call sign located in the Wilkes Barre-Scranton, Pennsylvania, DMA, owned by Dreamcatcher Broadcasting LLC, regarding which Tribune will exercise its option to acquire from Dreamcatcher Broadcasting LLC.

Y. "WOI-DT" means the ABC-affiliated broadcast television station bearing that call sign located in the Des Moines-Ames, Iowa, DMA, owned by Defendant Nexstar.

Z.      "WPMT" means the FOX-affiliated broadcast television station bearing that call sign located in the Harrisburg-Lancaster-Lebanon-York, Pennsylvania DMA, owned by Defendant Tribune.

AA.     "WQAD-TV" means the ABC-affiliated broadcast television station bearing that call sign located in the Davenport, Iowa-Rock Island-Moline, Illinois, DMA, owned by Defendant Tribune.

BB.     "WTIC-TV" means the FOX-affiliated broadcast television station bearing that call sign located in the Hartford-New Haven, Connecticut, DMA, owned by Defendant Tribune.

CC.     "WTKR" means the CBS-affiliated broadcast television station bearing that call sign located in the Norfolk-Portsmouth-Newport News, Virginia, DMA, owned by Dreamcatcher Broadcasting LLC, regarding which Tribune will exercise its option to acquire from Dreamcatcher Broadcasting LLC.

DD.     "WTVR-TV" means the CBS-affiliated broadcast television station bearing that call sign located in the Richmond-Petersburg, Virginia, DMA, owned by Defendant Tribune.

EE.     "WXMI" means the FOX-affiliated broadcast television station bearing that call sign located in the Grand Rapids-Kalamazoo-Battle Creek, Michigan, DMA, owned by Defendant Tribune.

FF.     "WZDX" means the FOX-affiliated broadcast television station bearing that call sign located in the Huntsville-Decatur-Florence, Alabama, DMA, owned by Defendant Nexstar.

## II. **OBJECTIVES**

A.      The Final Judgment filed in this case is meant to ensure Defendants' prompt divestitures of the Divestiture Assets for the purpose of preserving competition in (a) the licensing of Big 4 television network content to MVPDs for distribution to their subscribers ("retransmission

consent") in the Overlap DMAs, and (b) the sale of broadcast television spot advertising in the Overlap DMAs, in order to remedy the anticompetitive effects that Plaintiffs allege would otherwise result from Nexstar's proposed merger with Tribune.

B.  The United States has determined, for the purposes of this settlement, that: Scripps is an acceptable purchaser of the Divestiture Assets related to KSTU, WGNT, WTKR, WTVR-TV, and WXMI; TEGNA is an acceptable purchaser of the Divestiture Assets related to KFSM-TV, KCWI-TV, WATN-TV, WCCT-TV, WLMT, WOI-DT, WNEP-TV, WPMT, WQAD, WTIC-TV and WZDX; and Circle City Broadcasting is an acceptable purchaser of the Divestiture Assets related to WISH-TV and WNDY-TV.

C.  This Hold Separate Stipulation and Order ensures that, prior to the consummation of the ordered divestitures, the Divestiture Assets currently owned respectively by Nexstar and Tribune remain independent, economically viable and ongoing business concerns that will remain uninfluenced by the other Defendant, and that the level of competition that existed between the Defendants prior to the transaction is maintained during the pendency of the ordered divestitures.

### III. JURISDICTION AND VENUE

The Court has jurisdiction over the subject matter of this action and over each of the parties hereto, and venue is proper in the United States District Court for the District of Columbia. Defendants waive service of summons of the Complaint and accept electronic service of all pleadings.

### IV. COMPLIANCE WITH AND ENTRY OF FINAL JUDGMENT

A.  The parties stipulate that a Final Judgment in the form attached hereto as Exhibit A may be filed with and entered by the Court upon the motion of any party, or upon the Court's own motion, at any time after compliance with the requirements of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. § 16, and without further notice to any party or other proceedings,

provided that the United States has not withdrawn its consent, which it may do at any time before the entry of the proposed Final Judgment by serving notice thereof on Defendants and by filing that notice with the Court. Defendants agree to arrange, at their expense, publication as quickly as possible of the newspaper notice required by the APPA, which shall be drafted by the United States in its sole discretion. The publication shall be arranged no later than three business days after Defendants' receipt from the United States of the text of the notice and identity of the newspaper or newspapers within which the publication shall be made. Defendants shall promptly send to the United States (1) confirmation that publication of the newspaper notice has been arranged, and (2) the certification of the publication prepared by the newspaper or newspapers within which the notice was published.

B. Defendants shall abide by and comply with the provisions of the proposed Final Judgment pending the Judgment's entry by the Court, or until expiration of time for all appeals of any Court ruling declining entry of the proposed Final Judgment, and shall, from the date of the signing of this Stipulation by the parties, comply with all the terms and provisions of the proposed Final Judgment. The United States shall have the full rights and enforcement powers in the proposed Final Judgment, including Section X (Compliance Inspection), as though the same were in full force and effect as the Final order of the Court.

C. Defendants shall not consummate the transaction sought to be enjoined by the Complaint before the Court has signed this Hold Separate Stipulation and Order.

D. This Stipulation shall apply with equal force and effect to any amended proposed Final Judgment agreed upon in writing by the parties and submitted to the Court.

E. In the event (1) the United States has withdrawn its consent, as provided in Section IV(A) above, or (2) the proposed Final Judgment is not entered pursuant to this Stipulation, the time has expired for all appeals of any Court ruling declining entry of the proposed Final Judgment, and

the Court has not otherwise ordered continued compliance with the terms and provisions of the proposed Final Judgment, then the parties are released from all further obligations under this Stipulation, and the making of this Stipulation shall be without prejudice to any party in this or any other proceeding.

F.      Defendants represent that the divestitures required in the proposed Final Judgment can and will be made, and that Defendants will not later raise any claim of mistake, hardship, or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

## V.   HOLD SEPARATE PROVISIONS

Until the divestitures required by the Final Judgment have been accomplished:

A.      Defendants shall preserve, maintain, and continue to operate each Divestiture Station as an independent, ongoing, economically viable competitive business, with the management, sales, and operations of each station held entirely separate, distinct, and apart from those of Defendants' other operations. Defendants shall not coordinate the production, marketing, or terms of sale of any products or services with those produced by, provided by, or sold under any of the Divestiture Stations. Defendants shall take all steps necessary to preserve and maintain the value and goodwill of each Divestiture Station. Within twenty calendar days after the entry of the Hold Separate Stipulation and Order, Defendants will inform the United States and the Plaintiff States of the steps Defendants have taken to comply with this Hold Separate Stipulation and Order.

B.      Defendants shall take all steps necessary to ensure that (1) the Divestiture Stations will be maintained and operated as independent, ongoing, economically viable, and active competitors in the business of licensing retransmission consent to MVPDs and in the broadcast television spot advertising business; (2) each of Nexstar and Tribune will not influence the management of the Divestiture Stations owned by the other Defendant; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning the production,

distribution, provision, or sale of products or services by or under any of the Divestiture Stations owned by Tribune will be kept separate and apart from those of the Divestiture Stations owned by Nexstar and any of Nexstar's other operations.

C. Defendants shall use all reasonable efforts to preserve, in accordance with current practice, the existing relationships of the Divestiture Stations with each broadcast television spot advertising customer, with each MVPD retransmitting a broadcast station's programming, with each network providing affiliation and programming, and with others doing business with the Divestiture Stations.

D. Defendants shall use all reasonable efforts to maintain at 2018 or previously approved levels for 2019, whichever are higher, all promotional, advertising, sales, technical assistance, marketing, and merchandising support for the Divestiture Stations.

E. Defendants shall, to the extent permitted by the terms and conditions of the FCC's Equity/Debt Plus rule (47 C.F.R. § 73.3555, note 2(i)), provide sufficient working capital and lines and sources of credit to continue to maintain the Divestiture Stations as economically viable and competitive, ongoing businesses, consistent with the requirements of Paragraphs V(A) and V(B).

F. Defendants shall take all steps necessary to ensure that the Divestiture Assets are fully maintained in operable condition at no less than current capacity and sales and shall maintain and adhere to normal repair and maintenance schedules for the Divestiture Assets.

G. Defendants shall not, except as part of a divestiture approved by the United States in accordance with the terms of the proposed Final Judgment, remove, sell, lease, assign, transfer, pledge, or otherwise dispose of any of the Divestiture Assets.

H. Defendants shall provide such support services for each Divestiture Station as the station requires to operate as an economically viable, competitive, and ongoing provider of retransmission consent and broadcast television spot advertising. These support services may include

federal, state, and local municipal regulatory compliance; human resources; legal; finance; software and computer operations support; and such other services as are required to operate the Divestiture Assets.

I.      Defendants shall maintain, in accordance with sound accounting principles, separate, accurate, and complete financial ledgers, books, and records for each Divestiture Station that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues, and income of that station.

J.      Defendants shall take no action that would jeopardize, delay, or impede the sale of the Divestiture Assets.

K.      Unless the United States otherwise consents in writing, Defendants' employees of each Divestiture Station shall not be transferred or reassigned to other areas within Defendants' business before divestiture of that station, except for transfer bids initiated by employees pursuant to Defendants' regular, established, job posting policy.  Defendants shall provide the United States with ten calendar days' notice before such transfer.  Upon objection by the United States to such transfer, such employees shall not be transferred or reassigned.

L.      Defendants, subject to the approval of the United States, shall appoint a person or persons to oversee each Divestiture Station, and who will be responsible for Defendants' compliance with this section.  This person(s) shall have complete managerial responsibility for the respective Divestiture Stations, subject to the provisions of this Final Judgment.  In the event such person(s) is unable to perform his or her duties, Defendants shall appoint, subject to the approval of the United States, a replacement within ten business days.  Should Defendants fail to appoint a replacement acceptable to the United States within this time period, the United States shall appoint a replacement.

M.       Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer or Acquirers acceptable to the United States.

## VI. DURATION OF HOLD SEPARATE AND ASSET PRESERVATION OBLIGATIONS

Defendants' obligations under Section V of this Hold Separate Stipulation and Order shall remain in effect until (1) consummation of the divestitures required by the proposed Final Judgment or (2) further order of the Court.  If the United States voluntarily dismisses the Complaint in this matter, Defendants are released from all further obligations under this Hold Separate Stipulation and Order.

Respectfully submitted,
Dated: July 31        , 2019

**FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

_____
Lee F. Berger  (D.C. Bar #482435)
United States Department of Justice
Antitrust Division, Media, Entertainment,
  and Professional Services Section
450 Fifth Street, N.W., Suite 4000
Washington, D.C. 20530
Phone: 202-598-2698

**FOR DEFENDANT**
**NEXSTAR MEDIA GROUP, INC.**

_____
Michael B. DeRita (D.C. Bar #1032126)
Kirkland & Ellis LLP
1301 Pennsylvania Ave., N.W.
Washington, D.C., 20004
202-389-5122
michael.derita@kirkland.com

Ian G. John
Peter M. McCormack
601 Lexington Ave,
New York, NY 10022
212-446-4665
ian.john@kirkland.com

**FOR DEFENDANT**
**TRIBUNE MEDIA COMPANY**

_____
Ross A. Demain (DC Bar # 995043)
Deborah A. Garza (D.C. Bar # 359259)
Kavita R. Pillai (D.C. Bar # 1014443)
Covington & Burling LLP
850 10th Street N.W.
Washington, D.C. 20001
202-662-6000
rdemain@cov.com
dgarza@cov.com
kpillai@cov.com

**FOR PLAINTIFF STATE OF ILLINOIS:**

KWAME RAOUL
Attorney General

_____
Elizabeth L. Maxeiner
Assistant Attorney General, Antitrust Bureau
Office of the Illinois Attorney General
100 West Randolph Street
Chicago, Illinois 60601
Phone: 312-814-5470
Facsimile: 312-814-4209
E-mail: emaxeiner@atg.state.il.us

FOR THE COMMONWEALTH OF PENNSYLVANIA

Josh Shapiro
Attorney General

James A. Donahue, III
Executive Deputy Attorney General
Public Protection Division

Tracy W. Wertz
Chief Deputy Attorney General
Antitrust Section


Joseph S. Betsko
PA ID #82620
Senior Deputy Attorney General

Jennifer A. Thomson
PA ID #89360
Senior Deputy Attorney General

Antitrust Section
Office of Attorney General
14th Floor, Strawberry Square
Harrisburg, PA 17120
Telephone: (717) 787-4530
Fax: (717) 787-1190
E-mail: jthomson@attorneygeneral.gov

**FOR PLAINTIFF COMMONWEALTH OF VIRGINIA**

Mark R. Herring
Attorney General

Cynthia E. Hudson
Chief Deputy Attorney General

Samuel T. Towell
Deputy Attorney General
Civil Division

Richard S. Schweiker, Jr.
Senior Assistant Attorney General and Chief
Consumer Protection Section


*/s/ Sarah Oxenham Allen*
Sarah Oxenham Allen
VA Bar #33217
Senior Assistant Attorney General and Unit Manager
Tyler T. Henry
VA Bar #87621
Assistant Attorney General

Antitrust Unit
Office of Attorney General
202 North 9th Street
Richmond, VA 23219
Telephone: (804) 786-6657
Fax: (804) 786-0122
E-mail: soallen@oag.state.va.us

**<u>ORDER</u>**

IT IS SO ORDERED by the Court, this 19 day of August, 2019.

                                                                                                     _____
                                                                                                     DABNEY L. FRIEDRICH
                                                                                                     United States District Judge